UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CRIMINAL ACTION NO. 21-68-DLB-CJS**

**UNITED STATES OF AMERICA**                                                                                   **PLAINTIFF**

v.                                       **REPORT AND RECOMMENDATION**

**CONROD BURNETT**                                                                                              **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant Conrod Burnett's Motion to Suppress (R. 25). The Government responded to the Motion to Suppress (R. 29), and an evidentiary hearing was held on the Motion. (*See* R. 35). Upon conclusion of the hearing, the parties confirmed that post-hearing briefing was unnecessary. (*Id.*). However, the Court subsequently held an oral argument on the Motion to hear further from counsel. (R. 38). The Motion is now ripe for consideration and the preparation of a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B).[1] For the reasons discussed below, it will be recommended that the Motion to Suppress (R. 25) be denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In March 2021, members of the Boone County Sheriff's Office Crime Suppression Unit placed an advertisement on the website listcrawler.com containing explicit photographs and detailing the phone number and services offered by a supposed female prostitute. (*See* Plaintiff's Ex. 6). At the evidentiary hearing, Deputy Rachel Smith testified that she was operating the phone corresponding to the phone number listed in the advertisement on March 22, 2021, when Burnett contacted the phone number inquiring about a half hour rate, condoms, and what services would

---

[1] *See United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) (citing *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (characterizing a motion to suppress as dispositive)).

be provided.  Deputy Smith testified that she and Burnett agreed on a half hour rate of $150, and she provided him with the address to an apartment complex in Burlington, Kentucky, where deputies were conducting a prostitution sting targeting those responding to the advertisement. Deputy Smith asserted that at approximately 11:00 p.m. Burnett told her on the phone that he had arrived at the apartment complex, and she gave him directions to the specific apartment. Lieutenant Mitch Kotzbauer testified that he saw Burnett arrive at the apartment complex, park his vehicle and that upon exiting the vehicle, Burnett went to the passenger side and placed some items from the car into a backpack.

Deputy Miller's body camera footage revealed that at approximately 11:00 p.m., Burnett walked up to the apartment wearing a backpack and knocked on the door.  (Plaintiff's Ex. 1 at 23:06:30–35).  The door was answered by Deputies Miller and King, who informed Burnett they were with the Sherriff's Office, brought him into the apartment, took the backpack, and patted him down.  (*Id*. at 23:06:30–07:02).  Deputy Miller informed Burnett that they were doing a check for weapons.  (*Id*. at 23:07:00).  Burnett told the deputies that he "took an Uber" to get to the apartment and that there was a large amount of cash in his backpack.  (*Id*. at 23:07:10).  Deputy Miller found three cell phones on Burnett, who explained that he had so many phones due to "baby mama problems."  (*Id*. at 23:07:20).

The deputies then escorted Burnett to a back room that was being used for processing.  (*Id*. at 23:07:30–50).  Deputy Miller instructed Burnett to empty his pockets and Burnett did so.  (*Id*. at 23:08:10).  Deputy King asked Burnett if he cared if he looked through the backpack, and Burnett replied "Umm, nah," then explained that he was carrying such a large amount of cash because he was a promoter for concerts.  (*Id*. at 23:08:50–58).  Deputies Smith and King then searched Burnett's backpack while Deputy Justin Reil checked Burnett's identification in the Computer Aided Dispatch ("CAD") system.  (*Id*. at 23:10:20).  In the backpack, Deputy Smith

2

testified that she and Deputy King found over $45,000 in cash, bank envelopes, a baggie of what Burnett identified as sage, a box of condoms, and an empty plastic wrapper for a prepackaged THC edible.

Deputy Miller read Burnett his *Miranda* rights and asked Burnett if he understood. (*Id*. at 23:09:25–50). Burnett responded that he understood but asked what he was being charged with. (*Id*. at 23:09:49). Deputy Miller responded that Burnett would be charged with solicitation of prostitution. (*Id*. at 23:10:00). Deputy Miller told Burnett that he would not be going to jail, and that he would likely be out of there in 15 minutes. (*Id*. at 23:11:20). Deputy Miller immediately corrected himself, however, when Deputy Reil informed him that the CAD check showed that there were two warrants for Burnett's arrest: one for felonious domestic violence out of Hamilton County, Ohio, and the other for an escape charge out of California. (*Id*. at 23:11:33–50). Deputy Reil testified that the CAD system did not indicate whether the warrants were extraditable. Deputies handcuffed Burnett at that point, and told him that he was detained, but not arrested. (*Id*. at 23:11:40–12:07).

Burnett told deputies he had a prior trafficking charge, but that that charge was from a long time ago. (*Id*. at 23:12:20). Deputy Reil testified that he provided another deputy with Burnett's identification to contact dispatch and confirm the information about the warrants. Lieutenant Kotzbauer testified that, at some point after Deputy David Hehman arrived but before the K-9 sniff was conducted, he was informed that both warrants were "non-extraditable." Lieutenant Kotzbauer and Deputy Reil both testified that they had never encountered non-extraditable escape or felonious domestic violence warrants before in their career. Believing that this information may be erroneous, Lieutenant Kotzbauer testified he then contacted the Deputy United States Marshal assigned to the unit who agreed that it seemed unlikely that these types of warrants would be non-extraditable, but that nothing could be confirmed until the next day.

3

Lieutenant Kotzbauer, who now suspected Burnett was involved in drug trafficking, testified that he contacted Deputy Hehman to come to the apartment complex. Deputy Hehman testified that he and his K-9 Mike arrived at the apartment complex at approximately 11:15 p.m. to perform an open-air sniff of the car Burnett arrived in. (Plaintiff's Ex. 8). Lieutenant Kotzbauer testified that he smelled the presence of marijuana coming from the car before the search, and both Lieutenant Kotzbauer and Deputy Hehman testified that they smelled the presence of marijuana coming from the car during the search. Deputy Hehman testified that the open-air sniff was delayed by the need to remove a pet dog from the vehicle.

After Deputy Hehman arrived, Burnett was brought out of the apartment building to remove the dog from his car, and both he and the dog were placed in Sergeant Dawson Bowling's cruiser. At approximately 11:30 p.m., Deputy Hehman took K-9 Mike to perform the open-air sniff around the vehicle. Deputy Hehman testified that K-9 Mike exhibited several behavioral changes that he recognized as alerts to multiple parts of the vehicle. Deputies then searched the car and found a firearm and ammunition. Deputies did not find any drugs in the car. After conversing with Sergeant Bowling for about an hour in his cruiser, Burnett was taken to the local jail. (Plaintiff's Ex. 3.4 at 00:46:59).

On December 9, 2021, Burnett was charged in this Court in a one-count indictment with being a convicted felon in knowing possession of a firearm in violation of 18 U.S.C. § 922(g)(l). (R. 1). On February 23, 2022, Burnett filed a Motion to Suppress, requesting suppression of 1) all evidence seized from Burnett; 2) all statements taken or made by Burnett; 3) the "observations and opinions of the police officers following the search and arrest" of Burnett regarding Burnett's alleged misconduct; and 4) "written and verbal reports of examinations and tests of all substances" taken from Burnett. (R. 25 at Page ID 62). An evidentiary hearing was held (R. 35) and subsequent oral argument (R. 38). At oral argument, defense counsel agreed to narrow the scope of Burnett's

4

Motion to Suppress to whether the continued detention of Burnett was lawful after the deputies learned the outstanding warrants were non-extraditable. (*Id.*).

**II.    ANALYSIS**

The Fourth Amendment guarantees the right of the people to be secure in their persons against unreasonable searches and seizures. U.S. Const. amend. IV. In general, "probable cause justifies a search and seizure." *Whren v. United States*, 517 U.S. 806, 819 (1996). Probable cause exists when law enforcement has "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Absent probable cause, however, a police officer may briefly detain "a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). Such a brief investigatory detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). The Sixth Circuit employs a two-part test when determining the appropriateness of an investigatory stop:

> First, the Court must determine whether there was a proper basis to stop the individual based upon the officer's awareness of specific and articulable facts which gave rise to a reasonable suspicion. Second, the Court must evaluate whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.

*United States v. Martin*, 289 F.3d 392, 397 (6th Cir. 2002) (quotations omitted). An investigatory stop based on reasonable suspicion can become an arrest or seizure if it occurs over an unreasonable period of time or under unreasonable circumstances. *United States v. Orsolini*, 300 F.3d 724 (6th Cir. 2002). At that point, "[w]hen a detention rises to the level of a full-fledged

5

arrest, [] the Fourth Amendment demands that the seizure be supported by probable cause." *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000).

The test for probable cause is objective. *See United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991). Just as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists. *Id.* "[T]he fact that the officers did not believe there was probable cause and proceeded on a consensual or *Terry*-stop rationale would not foreclose the State from justifying [defendant's] custody by proving probable cause." *See id.* (quoting *Florida v. Royer*, 460 U.S. 491, 507 (1982)); *Cf. Hoover*, 682 F.3d at 500. Because probable cause existed to arrest Burnett on the prostitution offense, the limitations of the investigative scope imposed on *Terry* stops do not apply. *See Cooper*, 2018 WL 287863 at *3 (finding that because defendant's detention was based on probable cause and not reasonable suspicion, "the investigative scope requirements imposed by *Royer* are irrelevant."); *see also Davis*, 430 F.3d at 353 (explaining that probable cause to believe that a traffic violation has occurred does not allow the police to detain a suspect indefinitely unlike probable cause to believe that a criminal violation has occurred).

The parties do not dispute that Burnett was detained by police once he arrived at the apartment. Upon Burnett's arrival, the officers pulled him in the apartment, searched his person, and confiscated his cell phones. (Plaintiff's Ex. 1 at 23:06:30–07:02). His requests to use the bathroom and to call his sister were repeatedly denied. Once the officers discovered the open warrants, Burnett was handcuffed and told that he was not free to leave. (*Id.* at 23:11:40–12:07). The fact that the officers told Burnett that he was detained and not under arrest is immaterial to whether a seizure of his person occurred under the Fourth Amendment. Once Burnett was handcuffed and told he was not free to leave, Burnett's detention amounted to a *de facto* arrest and needed to be supported by probable cause. *See United States v. Cooper*, No. 5:17-cr-35-KKC,

6

2018 WL 287863 (E.D. Ky. Jan. 4, 2018), *aff'd*, 778 F. App'x 396 (6th Cir. 2019); *Gardenhire*, 205 F.3d at 303.

Burnett argues that his detention was unlawful because deputies should have released him with only a citation for solicitation for prostitution as soon as they learned that the two open warrants were non-extraditable.[2] (R. 25 at Page ID 65). The government contends, however, that the officers' detention of Burnett was lawful because the deputies could have placed Burnett under for solicitation of prostitution and not just issued a citation, the deputies had probable cause to place Burnett under arrest based on the outstanding warrants, and the deputies had reasonable suspicion to detain Burnett to investigate drug trafficking. (R. 29 at Page ID 79–84).

Burnett analogizes his continued detention to a *Terry* stop in a traffic context, where a traffic citation is issued and the operator's temporary seizure ends. It should be noted, however, that the citation had not been issued at the point that deputies learned of the outstanding warrants. There is "no rigid time limitation on the lawfulness of a *Terry* stop." *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990). A court should instead "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant . . . ." *United States v. Sharpe*, 470 U.S. 675, 687 (1985). In the course of issuing a citation, it is routine to confirm identification, check for warrants, and ask contextual questions, similar to a traffic stop. Burnett challenges that his continued detention at this point was unlawful.

The parties do not dispute that upon his appearance at the apartment, Burnett was chargeable with solicitation of prostitution.[3] Burnett was not placed under arrest but was detained

---

[2] Defense counsel analogized Burnett's detention to a traffic stop evaluated under the temporary seizure principles of *Terry v. Ohio*. 392 U.S. 1 (1968).

[3] Under Kentucky law, "a person is guilty of prostitution when he engages or agrees or offers to engage in sexual conduct with another person for a fee." Ky. Rev. Stat. § 529.020. Prostitution is a Class B misdemeanor. *Id*. In Kentucky, an officer may make an arrest without a warrant when a misdemeanor has been committed in his presence. *Id*. at § 431.005(1)(d). Therefore, deputies could have arrested Burnett upon his arrival to the apartment.

while officers initially investigated him. The course of that initial investigation involved an identification and records check. The United States argues that because the deputies could have placed Burnett under arrest for prostitution instead of issuing him a citation, his continued detention generally was supported by probable cause and therefore lawful. In *Hoover v. Walsh*, the Sixth Circuit found that continued investigatory detention by law enforcement was justified because they had probable cause to place the suspect under arrest for not having his driver's license, even though the deputies never intended to arrest or cite the suspect for that offense. 682 F.3d 481, 500 n. 52 (6th Cir. 2012). Here, unlike the suspect in *Hoover*, Burnett was not placed under arrest. The United States maintains that because probable cause existed to place Burnett under arrest for the prostitution offense, the deputies' decision to continue to detain Burnett was lawful, regardless of whether the deputies intended to investigate suspicions that the warrants may be extraditable or to investigate whether Burnett was involved in drug trafficking. But probable cause existed for the deputies to do so, and arguably this serves as the basis for the continued detention.

To the extent that the probable cause to place Burnett under arrest for solicitation of prostitution does not justify his continued detention, Burnett's continued detention while deputies addressed the warrants was permissible. In *United States v. Jones*, the Sixth Circuit held that an arresting officer had probable cause to make an arrest even though the National Crime Information Center (NCIC") indicated that the warrant might not be extraditable, and that it was not unreasonable that the arresting officer did not call to confirm that the warrants were nonextraditable. 260 F. App'x 769, 773–74 (6th Cir. 2008). The Court stated that probable cause is defined by determining "whether at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to

warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Id.* (quoting *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614–15 (6th Cir. 2007)). In *Jones,* the Court held that a lack of intent to extradite cannot alter whether probable cause exists to arrest a suspect on outstanding warrants. *Id.* at 774.

The United States has provided additional authority that displays "a long line of cases from [the Ninth] and other circuits that an 'NCIC hit,' although not definitive in terms of conviction, 'has routinely been accepted in establishing probable cause for a valid arrest.'" *Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 928 (9th Cir. 2001) (following paragraph of citations from other circuits omitted); *see also United States v. Boyce*, No. 10-CR-62, 2011 WL 1085792,*4 n.5 (N.D. Ind. Mar. 21, 2011) ("This Court agrees that extradition issues are separate from issues related to probable cause to arrest an individual named in a valid warrant."); *People v. Thompson*, 793 P.2d 1173, 1176 (Colo. 1990) (concluding that a "no extradition" provision in the warrant was not sufficient to invalidate the defendant's arrest).

The Court recognizes the above cases as persuasive to this issue. First, though *Case v. Kitsap* is older, the collection of citations to similar cases in other circuits is helpful in evaluating the legitimacy of the assertion that an NCIC hit can establish probable cause for an arrest. Second, while counsel for Burnett maintains that Burnett should have been released once the deputies learned the warrants were not extraditable, counsel did not point to any authorities that contradict the ones provided by the United States. Counsel for Burnett also did not attempt to distinguish the facts here from any of the authorities provided by the United States. Therefore, in the absence of more controlling authority from the Sixth Circuit, the Court will accept the proposition in the authorities provided by the United States that an out-of-state warrant gives law enforcement probable cause to detain a person in these circumstances.

Based on *Jones* and persuasive authority from other courts, the deputies here would have had probable cause to place Burnett under arrest on the out-of-state warrants even if the deputies had not called to confirm the status of the warrants, which they did. The deputies called dispatch to confirm the warrants were non-extraditable, but were concerned that the information was inaccurate due to the severity of the offenses. (R. 29 at Page ID 78). Lieutenant Kotzbauer and Deputy Reil both testified that they had never encountered non-extraditable escape or felonious domestic violence warrants before in their career. The deputies attempted to confirm this information with the U.S. Marshals Service but were told that they would not be able to confirm until the next day.

Under these circumstances, the case law supports that deputies had probable cause to place Burnett under arrest for the warrants. It was reasonable for the deputies to detain Burnett while deputies attempted to investigate the circumstances of whether the warrants were extraditable, and according to *Jones*, it was a courtesy for the deputies to do so when Burnett could have been placed under arrest outright. 260 F. App'x at 773–74. But the fact remains that Burnett was not told at this point that he was placed under arrest. However, even if arguably the fact that Burnett was not placed under arrest is determinative, reasonable suspicion had developed to continue to detain him, as discussed below.

A police officer may briefly detain "a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *Davis*, 430 F.3d at 354. The Sixth Circuit evaluates whether an officer had reasonable suspicion to support detention by examining the "totality of the circumstances." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001). A court must "determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even

if each individual factor is entirely consistent with innocent behavior when examined separately." *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 9 (1989)).

Here, the United States argues that the deputies had reasonable suspicion to detain Burnett for the following reasons: (1) one of the deputies smelled marijuana on Burnett when he entered the apartment; (2) Burnett was not truthful with officers when he told them he arrived by "Uber" even though the deputies saw him drive his vehicle into the parking lot; (3) after Burnett consented to the search of his backpack, deputies found $46,000 in cash and an empty marijuana edible package inside; (4) Burnett told deputies that he had the cash because he worked as a "promoter" and deputies were unable to verify that explanation; (5) Burnett told the deputies in the court of citation inquiries that he had a prior drug trafficking conviction; and (6) Burnett had three cell phones on his person. (R. 29 at Page ID 82). Taken together, the United States argues these facts establish reasonable suspicion of drug trafficking. Burnett argues that case law related to traffic stops[4] is analogous here, because "the only reason [Burnett] was detained after being told he was being cited for the solicitation charge was so they could get a drug dog to the scene." (R. 25 at Page ID 66). But the Court is not persuaded by that argument.

Each of the deputies' inferences is supported by existing case law. *United States v. Koger*, 52 F. App'x 429, 430–31 (holding that a "strong smell of marijuana" created reasonable suspicion for further investigation); *United States v. Calhoun*, 834 App'x 128, 133 (6th Cir. 2020) (falsifying statements to law enforcement can support reasonable suspicion); *United States v. Erwin*, 155 F.3d 818, 821–22 (6th Cir. 1998) (possessing drug paraphernalia can support reasonable suspicion); *United States v. Heath*, 259 F.3d 522, 528–29 (6th Cir. 2001) (holding that an officer's knowledge of a suspect's prior drug trafficking history can support an reasonable suspicion); *United States v.*

---

[4] Burnett argues that this case is most like a traffic stop, because Burnett could have received a citation and been "sent on his way." (R. 25 at Page ID 65–66). As previously addressed, counsel for Burnett did not provide authority for this argument in his brief or the oral argument.

11

*Townsend*, 305 F.33d 527, 544 (6th Cir. 2002) (owning multiple cell phones by itself does not create reasonable suspicion, but can still be considered with other factors). While Burnett maintains it is "not illegal to carry cash" (R. 25 at Page ID 65), the Supreme Court has held that large sums of cash can give rise to reasonable suspicion in combination with surrounding circumstances. *United States v. Sokolow*, 490 U.S. 1, 8–10 (1989); *see also United States v. Whitley*, 34 F.4th 522, 533 (6th Cir. 2022). And while the Sixth Circuit has not directly ruled on the issue, the Fourth Circuit has concluded that non-verifiable income can support reasonable suspicion. *United States v. Sales*, 64 F.3d 661 (4th Cir. 1995).

While each one of the listed activities could be completely innocuous on their own, the combination of drug smells and paraphernalia, a large sum of cash, multiple phones, and Burnett's own statements indicated a reasonable possibility that Burnett could be involved in drug trafficking and gave the deputies valid authority to detain him for further investigation. It was appropriate for deputies to detain Burnett while they called in a K-9 unit to sniff around his vehicle, especially when Burnett was not honest with the deputies about how he arrived at the apartment complex. (R. 29 at Page ID 83) ("The Defendant's false statement about how he arrived at the apartment supported reasonable suspicion to believe the Defendant wanted to conceal something in the vehicle.").

It is arguable that because Burnett could have been placed under arrest for solicitation or the outstanding warrants, even though he was not, his continued detention was lawful. But the surrounding circumstances support that the deputies developed reasonable suspicion for further investigation and indicate that even without probable cause to place him under arrest for solicitation or outstanding warrants, Burnett's detention was proper and lawful.

### III. CONCLUSION AND RECOMMENDATION

Because the parties agreed at oral argument (R. 38) that the lawfulness of the detention of Burnett was the sole issue to be determined by the Court, no other arguments raised in the Motion to Suppress (R. 29) will be considered. Accordingly, **IT IS RECOMMENDED** that Burnett's Motion to Suppress (R. 25) be **DENIED.**

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); *Thomas v. Arn*, 474 U.S. 140, 142 (1985); *United States v. Walters*, 638 F.2d 947, 950-51 (6th Cir. 1981).

Signed this 23rd day of November, 2022.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\criminal cov\2021\21-68-DLB R&R denyg mtn to supp.docx